## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALSCO, INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 1:19-cv-1631-CFC |
| | : |
| PREMIER OUTSOURCING PLUS, LLC, | : |
| ROBERT PACITTI, KLAHEIM DIXON, | : |
| LUDOVICO ORIENTE, AND DRYCLEAN | : |
| CENTRAL, | : |
| | : |
| Defendants. | : |

## DEFENDANTS PREMIER OUTSOURCING PLUS, LLC, ROBERT PACITTI, KHALEIM DIXON, AND DRYCLEAN CENTRAL'S OPENING BRIEF IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
Brandon J. Pakkebier (#6604)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com
pakkebier@fr.com

*Attorneys for Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central*

Dated: November 15, 2019

# **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ................................... 1

II.   SUMMARY OF THE ARGUMENT ......................................................... 1

III.  STATEMENT OF FACTS ........................................................................ 3

IV.  ARGUMENT ............................................................................................ 5

    A.   Legal Standards ............................................................................. 5

        1.   This case should be dismissed under Rule 12(b)(6) ................................................................. 5

        2.   Delaware law applies ........................................................ 6

    B.   Counts III, V, and VII Do Not State a Claim for Breach of Fiduciary Duty ......................................................................... 6

        1.   An Agent-Principal Relationship Does Not Establish A Fiduciary Duty ........................................... 6

        3.   Fiduciary Duties Terminate at the End of Employment ..................................................................... 9

    C.   Claim IX Does Not State A Claim For Aiding and Abetting Fraud . 10

        1.   Alsco Does Not Plead Fraud With Specificity ....................... 10

        2.   Alsco Fails to State a Claim for Aiding and Abetting ......................................................................... 14

        3.   Alsco's Aiding and Abetting Fraud Theory is Not Legally Cognizable .................................................. 15

    D.   Count X Fails to State a Claim for Tortious Interference ................. 16

        1.   Oriente's Contract .................................................... 17

        2.   Alsco's Customer Contracts ...................................... 17

E.   Count XI Fails to State a Claim for Tortious Interference with Prospective Business Opportunities ..................... 18

F.   Count XIII Fails to State a Claim for Civil Conspiracy................... 19

G.   Count XIV Fails to State a Claim for Unjust Enrichment ............... 20

V.   CONCLUSION ........................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
  891 A.2d 1032 (Del. Ch. 2006) ...................................................................10, 11

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
  871 A.2d 428 (Del. 2005) ...................................................................................19

*Albert v. Alex Brown Mgmt. Servs., Inc.*,
  C.A. No. 762-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ........................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................5, 20

*Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*
  ,835 F.3d 388, 402 (3d Cir. 2016) .......................................................................6

*Beard Res., Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010) ...............................................................................18

*Bhole, Inc. v. Shore Invs., Inc.*,
  67 A.3d 444 (Del. 2013) .....................................................................................16

*Cal. Public Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ...............................................................................10

*Dionisi v. DeCampli*,
  C.A. No. 9425, 1995 WL 398536 (Del. Ch. June 28, 1995) .............................10

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ...............................................................................14

*Gudzelak v. PNC Bank*,
  C.A. No. 12-1230-LPS, 2015 WL 1383068 (D. Del. Mar. 23,
  2015) ....................................................................................................................13

*Hirani Eng'g & Land Surveying, P.C. v. Mehar Inv. Grp., LLC*,
   C.A. No. 09-252-RGA, 2012 WL 2914932 (D. Del. July 17, 2012) ...........13, 14

*Hoover v. Wise*,
   91 U.S. 308 (1875) ................................................................................15

*Hopkins v. Concorde Career Colleges, Inc.*,
   C.A. No. 15-206-LPS, 2016 WL 1238775 (D. Del. Mar. 29, 2016) .................12

*Hydrogen Master Rights, Ltd. v. Weston*,
   228 F. Supp. 3d 320 (D. Del. 2017) ................................................................20

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. 2009) ...............................................................................19

*Marshal T. Simpson Tr. v. Invicta Networks, Inc.*,
   249 F. Supp. 3d 790 (D. Del. 2017) ................................................................14

*McCracken v. Raghbir*,
   C.A. No. 02-1482 JJF, 2004 WL 2326378 (D. Del. Oct. 7, 2004) ....................12

*Metro Ambulance Inc. v. E. Med. Billing, Inc.*,
   C.A. No. 13929, 1995 WL 409015 (Del. Ch. July 5, 1995) ...........................7, 8

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) .............................................................................21

*Ocwen Loan Servicing, LLC v. SFJV-2002-1, LLC*,
   No. N10C-09-071 CLS, 2011 WL 2175995 (Del. Super. Ct. May
   25, 2011) ........................................................................................................21

*Prestancia Mgmt. Grp., Inc. v. Va. Heritage Found., II LLC*,
   C.A. No. 1032-S, 2005 WL 1364616 (Del. Ch. May 27, 2005) .........................6

*Richie v. Hillton Environmental Partners, LLC*,
   C.A. No. 19-649-RGA-SRF, 2019 WL 2995178 (D. Del. July 9,
   2019) ..............................................................................................................11

*Stewart v. Wilmington Tr. SP Servs, Inc.*,
   112 A.3d 271 (Del. Ch. 2015) .......................................................................16

*U.S. Bank Nat'l Ass'n v. Gunn*,
   23 F. Supp. 3d 426 (D. Del. 2014) ................................................................18

*Underwood v. Benefit Express Servs., LLC,*
    No. 18-347-RGA-MPT, 2018 WL 6819003 (D. Del. Dec. 28,
    2018) ...................................................................................................5, 14

*United States v. Eastwick College,*
    657 F. App'x 89 (3d Cir. 2016) ..........................................................11

*Univ. Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.,*
    61 F. Supp. 3d 391 (D. Del. 2014)......................................................15

*Victaulic Co. v. Tieman,*
    499 F.3d 227 (3d Cir. 2007) ..................................................................5

*Wagamon v. Dolan,*
    C.A. No. 5594-VCG, 2013 WL 1023884 (Del. Ch. Mar. 15, 2013).................10

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.,*
    49 A.3d 1168 (Del. 2012) ....................................................................16

*Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC,*
    C.A. No. 7866-VCP, 2014 WL 897223 (Del. Ch. Mar. 5, 2014)...............6, 7, 8

*Wise v. Biowish Techs., Inc.,*
    C.A. No. 18-676-RGA, 2019 WL 192876 (D. Del. Jan. 11, 2019)....................12

## Other Authorities

Fed. R. Civ. P. 8(a)(2) ...............................................................................20

Fed. R. Civ. P. 9(b) ............................................................................10, 12

Fed. R. Civ. P 12(b)(6)......................................................................1, 5, 20

Fed. R. Evid. 201(b)(2) ............................................................................13

Restatement (Second) of Torts...................................................................16

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On August 30, 2019, Plaintiff filed this lawsuit against Defendants Robert Pacitti and Khaleim Dixon[1] (the "Individual Defendants"), Premier Outsourcing Plus, LLC ("POP") and Dryclean Central (together with the Individual Defendants and POP, the "Defendants") for breach of fiduciary duty, aiding and abetting fraud, tortious interference with contract and business relations, conversion, unjust enrichment, and civil conspiracy.

This is Defendants' Opening Brief in Support of Their Partial Motion to Dismiss certain counts of the Complaint for failure to state a claim under Fed. R. Civ. P 12(b)(6).

## II.     SUMMARY OF THE ARGUMENT

Counts III, V, VII, IX, X, XI, XIII, and XIV[2] should be dismissed against the Defendants for failure to state legally cognizable claims under Delaware law:

- Alsco's breach of fiduciary duty claims (Counts III, V, and VII) fail because Delaware law does not automatically create a fiduciary relationship between employer and employee.  Moreover, even if a fiduciary relationship were adequately alleged (and it is not), all of

---

[1]  Plaintiff misspelled Dixon's name in the case caption.

[2]  Defendants deny the allegations of conversion set forth in Count XII.  However, because it appears that Plaintiff states a claim for conversion, Defendants do not move to dismiss Count XII pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants intend to bring a Rule 12 motion on Count XII at the appropriate time.

Alsco's allegations relate to post-employment activities that do not fall within the scope of an employer-employee fiduciary relationship and thus cannot give rise to a claim for breach of those duties.

• Alsco's allegations of aiding and abetting fraud (Count IX) fail because the underlying fraud against Ludovico Oriente is not pled with specificity. But even if Alsco had stated a claim for fraud (and it does not), Alsco would be deemed to have had knowledge of the alleged underlying fraud and is thus barred from pursuing claims against third parties—such as the Defendants here.

• Alsco's tortious interference claims (Counts X and XI) not only fail to allege that any contracts were breached, but fail to allege the existence of any specific contracts.  Mere allegations that certain contracts were terminated, without more, is insufficient to state a claim under Delaware law.

• Alsco's civil conspiracy claim (Count XIII) does not allege that Dryclean Central was involved in any underlying wrong other than conversion and cannot be sustained on fraud or tortious interference grounds. Alsco further fails to adequately plead an underlying wrong with respect to the other Defendants, which negates Alsco's civil conspiracy claim for all predicates other than conversion.

2

- Alsco cannot sustain an unjust enrichment claim (Count XIV) because it has an adequate remedy at law: monetary damages.

## III.   STATEMENT OF FACTS

Alsco brings this action against one recent employee, two former employees, and two corporations. Alsco's purported grievances extend back to February 2013, when Alsco hired Ludovico Oriente ("Oriente") to run Alsco's Alexandria, Virginia branch. (Complaint, D.I. 1 ¶ 30.) As part of his employment, Oriente signed a "Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Commitment" agreement (the "Oriente Agreement).[3]  (*Id.* ¶ 34.)  Shortly thereafter, Alsco promoted Oriente to General Manager of its Lanham, Maryland branch, which services the Washington D.C. metropolitan area. (*Id.* ¶ 31.)

In January 2015, Alsco hired Robert Pacitti ("Pacitti") to manage its New Castle, Delaware branch. (*Id.* ¶ 20.)  Alsco employed Khaleim Dixon ("Dixon") as a route sales representative in New Castle, Delaware.  (*Id.* ¶ 24.)  Dixon was promoted to district manager in June 2016.  (*Id*.)  Unlike Oriente, Alsco does not allege that Pacitti or Dixon signed a confidentiality or non-compete agreement.  (*Id.* ¶¶ 20-29.)  Nor does Alsco allege that Pacitti or Dixon breached any such agreement.  (*Id*.)

---

[3]   Contrary to the assertions in the Complaint, the Oriente Agreement was not actually attached as an exhibit to the Complaint.

Alsco terminated Pacitti's employment on November 3, 2016. (*Id.* ¶ 23.) After being terminated by Alsco, Pacitti formed a linen company called Premier Outsourcing Plus, LLC ("POP"). (*Id.* ¶¶ 51-52.) POP provides linens, aprons, uniforms, and other supplies to the greater Wilmington, Delaware market. (*Id.* ¶ 53.) POP began operating in December 2016. (*Id.* ¶ 52.) In March, 2017, Alsco terminated Dixon's employment. (*Id.* ¶ 29.) Shortly thereafter, Dixon began working for POP. (*Id.* ¶ 54.)

Alsco alleges that the creation of POP, a post-termination event, violates Pacitti and Dixon's post-termination duties. (*Id.* ¶¶ 92-98.) But Alsco does not allege facts establishing that either Pacitti or Dixon owed any post-termination duties to the company. And Alsco makes no allegation that Pacitti violated any pre-termination duties. Significantly, there are no assertions that Pacitti created POP before he or Dixon were terminated by Alsco, or that POP competed with Alsco while either of them were employees of Alsco. Alsco did not commence this lawsuit until nearly three years after Pacitti's termination, and nearly two-and-a-half years after Dixon's termination—well after any pre-termination duties (which are not alleged) could have been breached.

The remaining corporate entity, Dryclean Central, is located in New Castle, Delaware. (*Id.* ¶ 6.)

## IV.   ARGUMENT

### A.   Legal Standards

#### 1.   This case should be dismissed under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citation omitted). Although well-pleaded factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"); *Underwood v. Benefit Express Servs., LLC*, No. 18-347-RGA-MPT, 2018 WL 6819003, at *2 (D. Del. Dec. 28, 2018) (explaining that the Court will reject "unsupported allegations, 'bald assertions,' and 'legal conclusions'"). Allegations not contained in the complaint, not attached as exhibits, or not within public record will not be reviewed.  *Underwood*, 2018 WL 6819003, at *3. If after applying these standards the Court finds that "plaintiff is not entitled to relief," the motion to dismiss should be granted.  *Id.* at *2 (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)).

### 2.    Delaware law applies

Despite Alsco's pleading to the contrary, no allegation in the Complaint alleges federal question subject-matter jurisdiction. (*See* D.I. 1 ¶ 7.)  Rather, this is a diversity action.  "A federal court sitting in diversity must apply state substantive law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.¸* 835 F.3d 388, 402 (3d Cir. 2016).  Thus, this Court must apply Delaware law.  Alsco appears to agree that Delaware law governs this action. (*See id*. at ¶ 139 (citing Delaware law).)

### B.    Counts III, V, and VII Do Not State a Claim for Breach of Fiduciary Duty[4]

### 1.    An Agent-Principal Relationship Does Not Establish A Fiduciary Duty

Alsco's legal conclusion that "an employee owes his employer a fiduciary duty" is not a correct statement of Delaware law.  (*Id*. at ¶ 92.)  "Under Delaware law, the relationship of agent to principal does not itself give rise to fiduciary duties." *Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*, C.A. No. 7866-VCP, 2014 WL 897223, at *20 (Del. Ch. Mar. 5, 2014); *see also Prestancia Mgmt. Grp., Inc. v. Va. Heritage Found., II LLC*, C.A. No. 1032-S, 2005 WL 1364616, at *6 (Del. Ch. May 27, 2005) (denying claim for breach of fiduciary duty because "[t]he existence of a principal/agent relationship does not, in and of itself, give rise to a fiduciary relationship") (quoting *Metro Ambulance Inc. v. E. Med. Billing, Inc.*,

---

[4]  But for the addition of the phrase "of loyalty", Counts V and VII are identical and entirely duplicative of Count III.

6

C.A. No. 13929, 1995 WL 409015, at *2-3 (Del. Ch. July 5, 1995)).

"[W]here an agent represents a principal in a matter where the agent is provided with confidential information to be used for the purposes of the principal, a fiduciary relationship *may arise*." *Wayman*, 2014 WL 897223 at *20 (emphasis added). Here, Alsco alleges—in conclusory fashion—that Pacitti and Dixon "had access to and knowledge of" its "prospective and existing customer lists, customer pricing and discounts, customer preferences, and contract terms." (D.I. 1 ¶¶ 22, 27.) But mere access to confidential information is not enough to establish a fiduciary relationship. The hallmark of a "special" principal/agent relationship that may give rise to a fiduciary relationship "is when matters are peculiarly within the knowledge of the agent." *Metro Ambulance*, 1995 WL 409015, at *3. Alsco has not pled that any of the information to which Pacitti and Dixon had access was "peculiarly within the[ir] knowledge." Indeed, Alsco pleads a mere employer-employee relationship. Nothing in the Complaint suggests that Pacitti or Dixon had "special knowledge," that there was an "element of confidentiality," or that there was a "dependence" by Alsco on Pacitti or Dixon. *Id*. Accordingly, the Complaint fails to plead a fiduciary relationship between Pacitti, Dixon, and Alsco. *See id.* (declining to find that a principal/agent relationship was a fiduciary relationship because there was no

"special knowledge, element of confidentiality or dependence").[5]  Counts III, V, and VII should be dismissed on that basis alone.

> **2.    Alsco Does Not Allege that Pacitti and Dixon Violated Their Privilege to Make Preparations to Compete Before Their Employment Relationship Ended**

Under Delaware law, employees "enjoy a privilege allowing them to make preparations to compete with their employer before their employment relationship ends."  *Wayman*, 2014 WL 897223, at *20.  However, as Delaware case law explains, that privilege is not without limitations.

> Under some circumstances, the purported exercise of the privilege may breach the employee's fiduciary duty of loyalty. For example, an employee may be denied the protection of the privilege when they have misappropriated trade secrets, misused confidential information, solicited the employer's customers *before cessation of employment*, conspired to effectuate mass resignation of key employees, or usurped a business opportunity of the employer. Ultimately, the determination of whether an employee has breached his fiduciary duties to his employer *by preparing to engage in a competing enterprise* "must be grounded upon a thoroughgoing examination of the facts and circumstances of the particular case."

*Id.* (emphasis added) (quoting *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 965 (Del. 1980)).

Alsco does not allege that Pacitti and Dixon misused confidential information, misappropriated trade secrets, conspired to effectuate mass resignation of key

---

[5] Unlike *Metro Ambulance*, Alsco does not even plead the existence of a contractual relationship with Pacitti or Dixon.

employees, solicited Alsco's customers or usurped a business opportunity of Alsco's *before their employment with Alsco ceased*.   Of course, Alsco makes no such allegation because Pacitti and Dixon were both fired.  (D.I. 1 ¶¶ 23, 29.)  Therefore, neither could have made preparations to compete with Alsco before their employment relationship ended.   In any event, Delaware law affords Pacitti and Dixon the privilege of making preparations to compete with Alsco before their employment relationship ended, and the Complaint is void of any allegations that they violated that privilege.

### 3. Fiduciary Duties Terminate at the End of Employment

All of Alsco's allegations against Pacitti and Dixon relate to post-employment competition.  Alsco alleges that "*after* he was terminated from Alsco (November 3, 2016), and without notice to or approval from Alsco, Pacitti formed and/or joined a competing linen company."  (D.I. 1 ¶ 51 (emphasis added).)  Alsco further alleges that it did not even begin to suspect that Pacitti and Dixon were working for POP until March 2019—*well after* both were terminated.  (*Id*. at ¶ 57.)  Specifically, Alsco alleges that Pacitti and Dixon "creat[ed], operat[ed], and work[ed] for a competitor," "solicit[ed] Alsco's business and customers," "solicit[ed], either directly or indirectly, Alsco's employees," "misus[ed] Alsco's Confidential Information to form and operate a competitor and tak[e] customers away from Alsco," "misappropriat[ed] trade secrets," "usurp[ed] Alsco's business opportunities," stole

"Alsco's products, services, and equipment," and "caus[ed] Alsco to launder its own linens for the benefit of a competitor." (*Id.* at ¶¶ 94, 96, 110, 112, 126, 128.)  Those post-employment acts are insufficient to state a claim for breach of fiduciary duty.

Post-employment competition is not a breach of fiduciary duty because no such duty exists under Delaware law. Termination of a relationship terminates the fiduciary duty. *See Dionisi v. DeCampli*, C.A. No. 9425, 1995 WL 398536, at *10 (Del. Ch. June 28, 1995) ("All of the acts DeCampli suggests were a breach of loyalty occurred after the venture concluded and cannot be used to support a claim of breach of fiduciary duty."); *Wagamon v. Dolan*, C.A. No. 5594-VCG, 2013 WL 1023884, at *2 (Del. Ch. Mar. 15, 2013) ("After the joint venture ended in April, neither Wagamon nor Dolan owed each other any fiduciary duty of loyalty."). Accordingly, Alsco's breach of fiduciary duty claims—which are premised entirely on post-employment competition—should be dismissed for failure to state a claim.

## C.    Claim IX Does Not State A Claim For Aiding and Abetting Fraud

### 1.    Alsco Does Not Plead Fraud With Specificity

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Pleading fraud with particularity requires a description of the "who, what, when, where and how" of the fraud. *Cal. Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).  *See also Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d

1032, 1050 (Del. Ch. 2006) (explaining that the elements of common law fraud in Delaware are: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance").

Alsco's only allegation of fraud is that "Oriente created a fictious [sic] account and misrepresented to Alsco that this account was to launder customer owned goods." (D.I. 1 ¶¶ 69-70.)   Alsco tries to connect Oriente to the Defendants by claiming, "[u]pon information and belief, the fictious [sic] account was created and used for POP's business . . . ." (*Id.*)  Importantly, information and belief pleading is improper when additional, specific facts are not included that show the basis for the purported belief. *United States v. Eastwick College*, 657 F. App'x 89, 95 (3d Cir. 2016) (noting that information and belief pleading not permissible unless facts are "peculiarly within the defendant's knowledge of control" and are supported by statements other than "boilerplate and conclusory allegations" (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)); *Richie v. Hillton Environmental Partners, LLC*, C.A. No. 19-649-RGA-SRF, 2019 WL 2995178, at *5 (D. Del. July 9, 2019) (granting motion to dismiss fraud claim

because "allegations based on information and belief are insufficient to satisfy the Rule 9(b) particularity standard unless the information is uniquely in the control of possession of the defendant"); *Hopkins v. Concorde Career Colleges, Inc.*, C.A. No. 15-206-LPS, 2016 WL 1238775, at *3 (D. Del. Mar. 29, 2016) (dismissing fraud count because "a conclusory statement is insufficient" and finding that allegations of information and belief were conclusory).

The Complaint does not plead any facts with the specificity required by Rule 9(b). For example, Alsco does not indicate when the fraud allegedly occurred, instead suggesting generally that the fraud occurred sometime during Oriente's employment at Alsco. (D.I. 1 ¶¶ 134, 141.) But Oriente was employed with Alsco for over six years. (*Id.* at ¶¶ 30, 36.) This exceedingly broad timeframe does not narrow the allegedly fraudulent activity to POP's corporate existence. Even if the allegations can be read as pertaining to POP, they encompass a nearly three-year timespan during Oriente's employment—December 2016 to July 2019. Courts routinely dismiss claims of fraud that fail to plead when the fraudulent activity occurred. *See Wise v. Biowish Techs., Inc.*, C.A. No. 18-676-RGA, 2019 WL 192876, at *5 (D. Del. Jan. 11, 2019) (dismissing fraud claim for failing to indicate when a conversation underlying fraud took place); *McCracken v. Raghbir*, C.A. No. 02-1482 JJF, 2004 WL 2326378, at *2 (D. Del. Oct. 7, 2004) (same). This Court should likewise dismiss for failure to specify when the alleged activity took place.

Additionally, the Complaint does not state where the alleged fraud occurred. Oriente was responsible for operations in the "Washington D.C. metropolitan area." (D.I. 1 ¶ 31.) That area encompasses the District of Columbia and three states: Maryland, Virginia, and West Virginia.[6] Office of Management & Budget, Bulletin No. 18-04 at 70 (Sept. 14, 2018), https://www.whitehouse.gov/wp-content/uploads/2018/09/Bulletin-18-04.pdf. The Complaint further asserts that POP operates in three additional states: Delaware, Pennsylvania, and New Jersey. (D.I. 1 ¶ 52.) Therefore, Alsco's allegations encompass a purported action or actions that encompass a large geographical region that could have occurred in any of seven States. But Alsco fails to name a single location where Oriente allegedly created a fictitious account or where Alsco "service[d] its own linens." (*Id.* at ¶¶ 69, 132-139.) Fraud claims are regularly dismissed where the location of the alleged fraud is not specified. *See Gudzelak v. PNC Bank*, C.A. No. 12-1230-LPS, 2015 WL 1383068, at *4 (D. Del. Mar. 23, 2015) (dismissing complaint that did not allege location of fraud); *Hirani Eng'g & Land Surveying, P.C. v. Mehar Inv. Grp., LLC*, C.A. No. 09-252-RGA, 2012 WL 2914932, at *3-4 (D. Del. July 17, 2012) (same).

Finally, the Complaint is devoid of any allegations as to what Oriente gained by creating the fictitious customer account. Alsco claims that the fictitious account

---

[6] The Court can take judicial notice of this fact because it comes from a United States government publication, which is a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

allowed POP to steal Alsco's linens and caused Alsco to launder those linens at a steeply discounted rate.  (D.I. ¶¶ 69-70, 132-139.)  But the Complaint does not allege Oriente's motive for his supposedly fraudulent behavior; there is no allegation of a *quid pro quo*.  (*Id.*)  Alsco's failure to plead what Oriente gained from the fraud, when and where the fraud occurred, and how the Defendants participated in the fraud—*i.e.* its "upon information and belief" assertions—are fatal to its fraud claim. When the pleadings fail to identify a fraud, the claim should be dismissed.  *See Frederico v. Home Depot*, 507 F.3d 188, 200-01 (3d Cir. 2007) (upholding dismissal of complaint that failed to identify "the substance of the misrepresentation" regarding vehicle return hours); *Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 249 F. Supp. 3d 790, 796 (D. Del. 2017) (dismissing fraud claim for failing to identify "'how' or 'why'" emails were false).

### 2.    Alsco Fails to State a Claim for Aiding and Abetting

When there is no underlying fraud, there cannot be a claim for aiding and abetting the fraud. "To prove a claim of aiding and abetting, a plaintiff must demonstrate that (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance for the wrongful act." *Underwood v. Benefit Express Servs., LLC*, C.A. No. 18-347-RGA-MPT, 2018 WL 6819003, at *4 (D. Del. Dec. 28, 2018). Alsco fails to plead with specificity the existence of fraud. In the absence

of fraud, there is no wrongful act and Alsco's aiding and abetting claim must fail. *See Univ. Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 61 F. Supp. 3d 391, 400-01 (D. Del. 2014) (dismissing aiding and abetting claim due to lack of "actionable common law fraud claim").

### 3. Alsco's Aiding and Abetting Fraud Theory is Not Legally Cognizable

Even if pled specifically, Alsco's allegations do not give rise to aiding and abetting fraud.  In Delaware, "the knowledge of an agent acquired while acting within the scope of his or her authority is imputed to the principal." *Albert v. Alex Brown Mgmt. Servs., Inc.*, C.A. No. 762-N, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005); *see Hoover v. Wise*, 91 U.S. 308, 311 (1875) ("[A principal] is liable in a civil suit if the fraud be committed in the transaction of the very business in which the agent was appointed to act."). In *Albert*, the complaint alleged that the agent's "employees, acting within the scope of their employment, had knowledge of the underlying factual allegations," thus imputing the agent's knowledge to the principal.  *Id.*  Like *Albert*, Alsco contends that Oriente was under Alsco's employ at the time of the alleged fraud. (D.I. 1 ¶ 134.) Alsco further contends that Oriente was at all times an agent for Alsco. (*Id.* ¶ 93.).  Accordingly, Oriente's knowledge of the alleged fraud is imputed to Alsco.

As a consequence of Alsco's imputed knowledge, Alsco cannot claim that the Defendants aided and abetted the fraud. The *in pari delicto* doctrine "provides that

15

rather than adjudicating a suit by one wrongdoer against her counterpart," a court will leave each person in the status quo. *Stewart v. Wilmington Tr. SP Servs, Inc.*, 112 A.3d 271, 302 (Del. Ch. 2015). This doctrine is properly invoked on a motion to dismiss. *Id.* Because Alsco imputedly knew of Oriente's alleged "wrongdoing, [Alsco] itself is a wrongdoer." *Id.* at 303. "As such, the company generally is barred from stating a legal or equitable claim against a third party that participated in the scheme of wrongdoing." *Id.* In other words, Alsco cannot simultaneously claim that Oriente is its agent, disavow Oriente's knowledge, and bring an action against Defendants for aiding and abetting the breach. Therefore, Alsco's claims against Defendants for aiding and abetting should be dismissed.

### D.    Count X Fails to State a Claim for Tortious Interference

Tortious interference with contract requires: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013). Delaware courts follow the Restatement (Second) of Torts with respect to the tort. *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012). Under the Restatement, elements one and two require "knowledge of the contract with which [one] is interfering and of the fact that he is interfering with the performance of the contract." Restatement (Second) of Torts § 766 cmt. i. Here, the Complaint does not

plead Defendants' knowledge of the Oriente Agreement or Alsco's customer contracts, and the Complaint does not plead Defendants' knowledge of their supposed interference with those contracts.

### 1.    The Oriente Agreement

Alsco's allegations do not establish that the Individual Defendants knew about the Oriente Agreement. Alsco alleges simply on information and belief that the Defendants *would be* aware of Oriente's Agreement. (D.I. 1 ¶¶ 60, 150.) Alsco's own representation is only that certain employees—not all employees—sign agreements. (*Id.* ¶ 147.) And those "certain employees" can sign a "substantially similar agreement," not necessarily an identical one. (*Id.*) Because Alsco does not allege that the Individual Defendants are those "certain employees" or indeed, that Pacitti or Dixon ever signed any contract (let alone a similar contract), Alsco's allegations are insufficient to establish POP's or the Individual Defendant's knowledge of the Oriente Agreement.

### 2.    Alsco's Customer Contracts

Alsco's allegations with respect to customer contracts suffer from infirmities related to knowledge and actual breach of those contracts. Nowhere does Alsco allege the existence of, or that the Defendants had actual knowledge of, any specific customer contracts. Alsco's allegation is merely that the Individual Defendants *must have* known about specific customer contracts because they knew that Alsco entered

into contracts with customers. (D.I. 1 ¶¶ 148-49.) That does not demonstrate that the Defendants had actual knowledge of any alleged contracts. Moreover, Alsco does not allege that any customer contracts were ever breached. Rather, Alsco alleges that POP and the Individual Defendants' actions caused "Alsco's customers to terminate contracts or otherwise end their business relationship with Alsco." (D.I. 1 ¶ 151.) But under Delaware law, "mere termination of a contract is not sufficient" to prove tortious interference. *See Beard Res., Inc. v. Kates*, 8 A.3d 573, 607 (Del. Ch. 2010). Thus, the Complaint amounts to a generalized allegation that the Defendants caused Alsco to lose business.  Such an allegation does not state a claim.

### E.     Count XI Fails to State a Claim for Tortious Interference with Prospective Business Opportunities

Tortious interference with a prospective business opportunity requires showing "(1) the reasonable probability of a business opportunity; (2) the intentional interference by defendant with that opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interest in a fair and lawful manner." *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014). Delaware law requires that "a plaintiff 'must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm'" in order to prove a reasonable probability. *Id.* (quoting *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20,

2009)). Alsco's only allegation is that "[u]pon information and belief, Alsco also had a reasonable probability of business opportunities with POP's customers as its customers are within Alsco's territory." (D.I. 1 ¶ 160.) That allegation names no specific party or any specific interference. That is generalized harm, which does not establish reasonable probability of a business relationship.  Alsco's claim for tortious interference with prospective business relationships should therefore be dismissed.

### F.    Count XIII Fails to State a Claim for Civil Conspiracy

In the absence of any underlying wrongdoing, Alsco's claims for civil conspiracy for anything but conversion fail as a matter of law. "The elements for civil conspiracy are (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005). "Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. 2009) (citing *Ramunno v. Carley*, 705 A.2d 1029, 1039 (Del. 1998)). "Thus, if plaintiff fails to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed." *Id.*  Here, Alsco has failed to adequately plead its allegations of breaches of fiduciary duty, fraud, aiding and abetting fraud, tortious interference with contract, or tortious interference with business opportunity.

In particular, Alsco charges Dryclean Central with civil conspiracy but fails

19

to name Dryclean Central as a participant in any alleged wrongdoing other than conversion. As such, except for the civil conspiracy claim predicated on conversion, the civil conspiracy claim against Dryclean Central cannot stand. With respect to the civil conspiracy claim against the remaining Defendants, other than for conversion, it should be dismissed for failure to adequately plead the existence of an underlying wrong.

### G.    Count XIV Fails to State a Claim for Unjust Enrichment

The Complaint merely restates the elements of an unjust enrichment claim and does not adequately plead its entitlement to relief. A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This must amount to more than a "formulaic recitation of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Alsco's claim merely recites the elements of unjust enrichment, and then concludes that the Defendants' actions are exactly that. (*E.g.*, D.I. 1 ¶ 184 ("There is no justification for Defendants' unjust enrichment and Alsco's resulting impoverishment.")). In the absence of any well-pleaded facts, Alsco's unjust enrichment count cannot survive this motion to dismiss. *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 337 (D. Del. 2017) (dismissing unjust enrichment claim under Rule 12(b)(6) as "merely a recitation of the[] elements" of unjust enrichment, "which is not sufficient to state a claim").

Furthermore, an unjust enrichment claim requires an "absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). But "[m]onetary damages are a remedy at law." *Ocwen Loan Servicing, LLC v. SFJV-2002-1, LLC*, No. N10C-09-071 CLS, 2011 WL 2175995, at *2 (Del. Super. Ct. May 25, 2011). Each of Claims III, V, VII, IX, X-XIII pleads the existence of "at least $75,000" in damages. (*See, e.g.*, D.I. 1 ¶ 154.) And Alsco's Prayer For Relief requests that the Court grant those damages. (*Id*. at 34 ¶ C.) Because there is an adequate remedy at law—actual damages—Alsco's unjust enrichment claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Alsco's claims against the Defendants should be

dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Dated:  November 15, 2019

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    Brandon J. Pakkebier (#6604)
    222 Delaware Ave., 17th Floor
    Wilmington, DE 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com
    pakkebier@fr.com

*Attorneys for Defendants Premier*
*Outsourcing Plus, LLC, Robert Pacitti,*
*Khaleim Dixon, and Dryclean Central*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALSCO, INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 1:19-cv-1631-CFC |
| | : |
| PREMIER OUTSOURCING PLUS, LLC, | : |
| ROBERT PACITTI, KLAHEIM DIXON, | : |
| LUDOVICO ORIENTE, AND DRYCLEAN | : |
| CENTRAL, | : |
| | : |
| Defendants. | : |

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION <u>PURSUANT TO NOVEMBER 6, 2019 STANDING ORDER</u>

1.      Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central's Opening Brief In Support of Their Partial Motion to Dismiss for Failure to State a Claim complies with the typeface requirement because it has been prepared in Times New Roman 14-point interface.

2.      Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central's Opening Brief In Support of Their Partial Motion to Dismiss for Failure to State a Claim complies with the type volume limitation because it contains 4,719 words, which were counted using the Word Count feature in Word 2016.

23

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
     Jeremy D. Anderson (#4515)
     Brandon J. Pakkebier (#6604)
     222 Delaware Ave., 17th Floor
     Wilmington, DE 19801
     (302) 652-5070 (Telephone)
     (302) 652-0607 (Facsimile)
     janderson@fr.com
     pakkebier@fr.com

*Attorneys for Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central*