# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALSCO, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:19-cv-1631-CFC |
| | : | |
| PREMIER OUTSOURCING PLUS, LLC, | : | |
| ROBERT PACITTI, KLAHEIM DIXON, | : | |
| LUDOVICO ORIENTE, AND DRYCLEAN | : | |
| CENTRAL, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS PREMIER OUTSOURCING PLUS, LLC, ROBERT PACITTI, KHALEIM DIXON, AND DRYCLEAN CENTRAL'S REPLY BRIEF IN SUPPORT OF THEIR PARTIAL <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
Brandon J. Pakkebier (#6604)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com
pakkebier@fr.com

*Attorneys for Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central*

Dated: December 16, 2019

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.     Alsco Fails to State a Claim for Breach of Fiduciary Duty............................1

       A.     Alsco Has Not Alleged Facts Showing that Pacitti and Dixon Owe
              Fiduciary Duties to ALSCO ...................................................................1

       B.     Alsco Does Not Claim that Pacitti and Dixon Committed a
              Fraudulent, Unfair, or Wrongful Act in Preparing to Compete with
              Alsco .......................................................................................................4

II.    Alsco Fails to State a Claim for Aiding and Abetting Fraud .........................6

       A.     Alsco Does Not Plead Fraud With the Required Specificity ...............6

       B.     Alsco Does Not State a Claim for Aiding and Abetting ......................8

III.   Alsco Fails to State a Claim for Tortious Interference With Contract...........9

IV.    Alsco Fails to State a Claim for Civil Conspiracy .......................................10

V.     Alsco Fails to State a Claim for Unjust Enrichment ....................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
   891 A.2d 1032 (Del. Ch. 2006) ..........................................................................6

*Beard Research Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010) .........................................................................2, 3, 5

*Brophy v. Cities Serv. Co.*,
   70 A.2d 5 (Del. Ch. Dec. 14, 1949)..............................................................2, 4, 5

*Capitaliza-T Sociedad de Responsabilidad Limitada de Capital
   Variable v. Wachovia Bank of Del. Nat'l Ass'n*,
   2011 WL 864421, at *5 (D. Del. Mar. 9, 2011) ...................................................8

*Compaq Computer Corp. v. Packard Bell Elecs.*, Inc.,
   948 F. Supp. 338 (D. Del. 1996)..........................................................................7

*Delaware Express Shuttle, Inc. v. Older*,
   2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .....................................................3

*Metro Ambulance Inc. v. E. Med. Billing, Inc.*,
   1995 WL 409015 .................................................................................................4

*Orthopaedic Assocs. of S. Del., P.A. v. Pfaff*,
   2018 WL 822020 (Del. Super. Feb. 9, 2018) ................................................9, 10

*Science Accessories Corp. v. Summagraphics Corp.*,
   425 A.2d 957 (Del. 1979) ................................................................................2, 4

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
   112 A.3d 271 (Del. Ch. 2015) .............................................................................9

*Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*,
   2014 WL 897223 (Del. Ch. Mar. 5, 2014) ......................................................3, 5

**Statutes**

Delaware Uniform Trade Secrets Act, 6 Del. Code Ann. §§ 2001-
   2009..................................................................................................................3

ii

**Other Authorities**

Federal Rules of Civil Procedure Rule 9 .................................................................6

## **INTRODUCTION**

Alsco alleges that two former employees, Robert Pacitti and Khaleim Dixon, breached fiduciary duties to their multinational corporation.[1] Alsco is wrong. Alsco has not alleged facts establishing that Pacitti and Dixon had fiduciary duties, and even if it had, Alsco alleges no facts that Pacitti and Dixon committed a fraudulent, unfair or wrongful act in preparing to compete, or competing with, Alsco.  Furthermore, Alsco confuses which defendants have been charged with which Counts, introduces facts not in the Complaint, adopts inconsistent positions inconsistent with the Complaint, and misstates Delaware law.  Accordingly, Defendants' Motion should be granted on Alsco's claims for breach of fiduciary duty, aiding and abetting, tortious interference, civil conspiracy, and unjust enrichment.

## **ARGUMENT**

I.   **Alsco Fails to State a Claim for Breach of Fiduciary Duty**

   A.   **Alsco Has Not Alleged Facts Showing that Pacitti and Dixon Owe Fiduciary Duties to Alsco**

Pacitti and Dixon were not directors or officers of Alsco.  Until being fired, they were employees of *one* of Alsco's 81 branches in the United States—the New

---

[1] Alsco is an international company that "currently operates in 14 countries around the globe."  (Compl. ¶ 12.) Alsco operates "in at least 40 states through 81 branches and 99 depots" in the United States. (*Id.*)

1

Castle, Delaware branch.  Because *employees do not have fiduciary duties*, Alsco invokes the rare exception to that rule. (D.I. 20 at 4 (citing *Brophy v. Cities Serv. Co.*, 70 A.2d 5, 7 (Del. Ch. 1949)).  But that rare exception does not fit Alsco's pled facts.

The gaping hole in Alsco's Complaint is its failure to allege that Pacitti and Dixon acquired "secret information" as key managers of the Company to put them in "position[s] of trust and confidence toward it, analogous . . . to that of a fiduciary." *Brophy*, 70 A.2d at 5 (finding that defendant was employed in an "executive capacity"). First, Alsco does not allege that Pacitti and Dixon were key managerial personnel.  *See Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1979) (explaining that "key managerial personnel" can have fiduciary duties in certain instances); *Beard Res. Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010) (finding that the defendant was "both an officer and one of the key managerial personnel of [the company] and, therefore, owed that company fiduciary duties")*.*  At most, Alsco has alleged that Pacitti and Dixon were mid-level managers of a large multinational corporation. Pursuant to *Brophy*, *Science Accessories Corp*. ("*SAC*") and *Beard*, that is not enough to plead a fiduciary relationship.

Second, Alsco's allegation that Pacitti and Dixon acquired secret information is merely conclusory.  For example, Alsco does not claim that the

"prospective and existing customer lists" (D.I. 20 at 5) that Pacitti and Dixon

supposedly used violated the Delaware Uniform Trade Secrets Act, 6 Del. Code

Ann. §§ 2001-2009.  But even if it did, Alsco would also have had to allege that

customers in its industry—the textile laundry business—could not be easily

identified, and thus, that its customer lists were not "readily producible from

sources already in the public domain." *Delaware Express Shuttle, Inc. v. Older*,

2002 WL 31458243, at *18 (Del. Ch. Oct. 23, 2002); *Wayman Fire Protection,*

*Inc. v. Premium Fire & Security, LLC*, 2014 WL 897223 at *14-16 (Del. Ch. Mar.

5, 2014)(contact list did not qualify as a trade secret because the identities of the

customers could be easily determined); *Beard*, 8 A.3d 573, 589 n. 3 (finding that

customer list was not a trade secret because plaintiff did not prove it was "anything

more than a compilation of business cards containing contact information[,] or that

such information [wa]s not readily ascertainable by proper means"). Alsco makes

no such claims.

Alsco's allegations regarding "customer pricing and discounts, customer

preferences, and contract terms" (D.I. 20 at 5) suffer the same infirmities.  They

are not alleged to be trade secrets and nothing about that information is not

ascertainable by proper means.  Moreover, unlike *Beard*, Alsco does not allege that

Pacitti and Dixon had any contractual duties of confidentiality with Alsco.  *See*

*Beard*, 8 A.3d at 582 (noting plaintiff's confidentiality agreements with Pfizer).

3

Because the Complaint does not allege facts establishing that Pacitti and Dixon had a fiduciary relationship with Alsco, Alsco's breach of fiduciary duty claims should be dismissed.  *See Metro Ambulance Inc. v. E. Med. Billing, Inc.*, 1995 WL 409015, at *2-3 (Del. Ch. July 5, 1995)  (finding that complaint did not state a claim for breach of fiduciary duty because "[n]o special knowledge, element of confidentiality or dependence exists which would lead me to conclude the parties had a fiduciary relationship"); *Brophy*, 70 A.2d at 8 (finding that the complaint stated a claim against the employee for breach of fiduciary duty because "a confidential relation" between the employee and the company was alleged).

## B.    Alsco Does Not Claim that Pacitti and Dixon Committed a Fraudulent, Unfair, or Wrongful Act in Preparing to Compete with Alsco

Even if Pacitti and Dixon owed fiduciary duties to Alsco (and they do not), employees are allowed to "make arrangements to compete with their employers prior to leaving."  D.I. 15 at 8-9; *SAC,* 425 A.2d at 964-65. Examples of a fraudulent, unfair or wrongful act "which will defeat the privilege are: misappropriation of trade secrets; misuse of confidential information; solicitation of employer's customers prior to cessation of employment; conspiracy to bring about mass resignation of employer's key employees; usurpation of employer's business opportunity." *Id*. (citations omitted).

As discussed, Alsco does not allege that Pacitti and Dixon violated Delaware's Uniform Trade Secrets Act. Nor does Alsco allege that they solicited Alsco's customers prior to cessation of employment, conspired to bring about a mass resignation of key employees, or usurped a business opportunity. Alsco's bare allegations of misappropriation of confidential information stand in stark contrast to those in *Brophy*, *Beard*, and *Wayman*. In *Brophy*, plaintiff alleged that defendant, a company "executive," used "secret" inside information to purchase shares of company stock for his pecuniary gain. *Brophy*, 70 A.2d at 7. In *Beard*, the plaintiffs alleged (and the court found) that the former employer took a catalog of valuable chemical compounds, which contained valuable trade secrets, as well as other confidential information, to his new employer. *Beard*, 8 A.3d at 602-03. And in *Wayman*, the plaintiff alleged (and the court found) that the former employee downloaded multiple confidential company files onto a flash drive before leaving his employment, and uploaded those files onto his computer at his new employer. *Wayman*, 2014 WL 897223 at *7-8.

Under Alsco's flimsy pleadings, any employee with access to a customer list during his employment—such as sales representatives, delivery drivers, and secretaries—could be liable for breach of fiduciary duty. But that is not Delaware law. Alsco's bare and conclusory allegations do not state a claim.

## II.   Alsco Fails to State a Claim for Aiding and Abetting Fraud

### A.   Alsco Does Not Plead Fraud With the Required Specificity

Contrary to Alsco's assertions, the Defendants have not "demand[ed] that Alsco name specific customers, specific contracts, exactly when Oriente created the fictitious COGs account, precisely when Oriente had Alsco's stolen linens laundered at the Landham [sic] Branch, and how Oriente benefited from the creation of the false COGs account and laundering of stolen goods." (D.I. 20 at 6). Rather, the Motion is directed to at least three pleading deficiencies: (1) When, during Oriente's six year tenure with Alsco, was the purported fraud committed? (2) Where, given the broad geographic reach of Oriente's and POP's business, did the fraud allegedly occur? and (3) Why/How did the supposed fraud occur?[2] While it is true that Rule 9 of the Federal Rules of Civil Procedure permits "alternative means of injecting precision" that differ from typical formulations of "who, what, when, where, and why," (D.I. 20 at 6-7), Alsco cannot belatedly inject precision into its Complaint through an opposition to a motion to dismiss. *See*

---

[2] "To satisfy Rule 9(b), a complaint must allege: (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) *what the person intended to gain by making the representations*." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) (emphasis added). As set forth in the Motion, the Complaint lacks any allegations about how Oriente benefitted by causing Alsco to launder Pacitti and Dixon's linens at a discount.

6

*Compaq Computer Corp. v. Packard Bell Elecs*., Inc., 948 F. Supp. 338, 344 (D. Del. 1996) (plaintiff "cannot amend its complaint through its briefs").

In its opposition, Alsco argues that "it is clear" that the location and timeframe of the fraud was the Lanham Branch from March 3, 2019 to July 2, 2019. (D.I. 20 at 7). But the Complaint merely states that Oriente committed the alleged fraud "while employed as a General Manager by Alsco" (D.I. 1 ¶ 134), which was from "shortly after" February 15, 2013 until July 2, 2019 (D.I. 1 ¶¶ 30-31, 36)  Moreover, Alsco's argument that Oriente created a fictitious account "after Dixon stole an Alsco dirty linen hamper" (D.I. 20 at 7) is inconsistent with the Complaint.  The Complaint alleges that the account was created first: "Oriente . . . created a fictious [sic] account to launder linens owned by Alsco—which were then stolen by Defendants." (D.I. 1 ¶ 134.) Alsco cannot change the facts and contradict its own pleading in an opposition brief to save its deficient claim.

Furthermore, Alsco cannot rely solely upon "information and belief" pleading because its fraud allegation does not "describe information uniquely with the knowledge of Defendants." (D.I. 20 at 7.)  Alsco alleges that Oriente "created a fictious [sic] account and misrepresented to Alsco that this account was to launder customer owned goods." (D.I. 1 ¶¶ 69-70.)  If that fictitious account was indeed created, it is under Alsco's control.  Therefore, Alsco should know exactly when, where, and why it was created.  Alsco should have records showing that it "was

7

created and used for POP's business." (*Id*.)  And Alsco should know exactly how Oriente benefitted from the alleged scheme.  Because Alsco has not pled any such facts, it is clear that Alsco's fraud claim based on nothing more than speculation and conjecture—which is insufficient to plead fraud under Rule 9.

### B.     Alsco Does Not  State a Claim for Aiding and Abetting

First, because Alsco does not state claim for fraud, there can be no claim for aiding and abetting the fraud.  (D.I. 15 at 14-15.)  Second, even if Alsco did state a claim for fraud against Oriente, Alsco does not state a claim for aiding and abetting against Defendants because it does not plead that they "had knowledge of the act." (*Id*.) The crux of Alsco's claim is that Defendants "knew" that Oriente established a fictitious account and misrepresented it to Alsco because Pacitti, Dixon and DryClean Central paid Alsco an "extremely discounted rate." [3] (D.I. 1 ¶ 142.)  That is not enough to state a claim under Delaware law.  Pleadings of actual knowledge, "not merely that the defendant knew something was wrong in general," are required. *Capitaliza-T Sociedad de Responsabilidad Limitada de Capital Variable v. Wachovia Bank of Del. Nat'l Ass'n*, 2011 WL 864421, at *5 (D. Del. Mar. 9, 2011).

---

[3] But for that allegation, all of Alsco's allegations of POP, Pacitti, Dixon, and DryClean Central's "knowledge" are directed toward Oriente, or relate to Pacitti and Dixon's purported knowledge of Alsco's confidential information. (D.I. 20 at 9.)

Finally, while the *in pari delicto* doctrine may not apply to auditors, receivership trustees, and derivative plaintiffs, it does apply to direct parties such as here. *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 319 (Del. Ch. 2015). Moreover, the doctrine's "adverse interest exception" does not apply. (D.I. 15 at 15-16.) The adverse interest exception covers "only the 'unusual' case in which the allegations support a reasonable inference of 'the type of total abandonment of the corporation's interests' that is characteristic of, for example, outright stealing from the corporation." *Stewart*, 112 A.3d at 319 (quoting *In re Am. Int'l Grp., Inc.,* 976 A.2d 872, 893-94). Here, Alsco has alleged that it serviced Defendants' linens at "an approximately 75% discounted rate." (D.I. 1 at ¶ 69.) Because that purported misconduct conferred "at least some benefit on" Alsco, the adverse interest exception is not applicable. *Stewart*, 112 A.3d at 319.

## III. Alsco Fails to State a Claim for Tortious Interference

Alsco argues that "[t]he complaint need not identify the party by name" with respect to customer contracts. (D.I. 20 at 10 (quoting *Orthopaedic Assocs. of S. Del., P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018)). Alsco is wrong. *Orthopaedic Associates* applies to interference with potential business—not contract. *Id.* at *3 (discussing "the first element of tortious interference with business relations"). In cases of tortious interference with contract, a specific customer and specific contract must be alleged. (D.I. 15 at 16.) Alsco has not done

9

so with respect to Oriente's agreement or any purported customer agreements. Alsco's only allegations are that "POP has known that Oriente signed the Agreement and has knowledge of Oriente's obligations under the Agreement," and that POP knew which "customers they *used to* interact with." (D.I. 20 at 10.) Neither establishes that Defendants knew of then-existing customers or contracts. Those conclusory allegations should be dismissed.

Nor does Alsco's allegation that "[u]sing Confidential Information to take five more prospective customers that were on Alsco's watch list," (D.I. 20 at 11), suffice to state a claim for tortious interference with business opportunities. Such a claim requires more than mere "generalized allegations of harm." (D.I. 15 at 18-19.) As *Orthopaedic Associates*, indicates, "[a]n alleged interference in a prospective business relationship is only actionable if it is wrongful." *Orthopaedic Assocs.*, 2018 WL 822020 at *3. Where, as here, the plaintiffs "have not stated why or how these actions are wrongful or actively interfered with their prospective business relations" there is insufficient matter to support a claim for the tort. *Id.* Alsco's allegations merely assert that POP acquired new customers. Without more, Alsco's tort claims should be dismissed.

## IV.   Alsco Fails to State a Claim for Civil Conspiracy

Alsco's "civil conspiracy claim against all Defendants" cannot survive the Motion.  The only Counts against DryClean Central are for conversion and for

civil conspiracy with respect to that conversion. (D.I. 15 at 19-20.)  In failing to plead any other underlying causes of action against DryClean Central, all claims for civil conspiracy predicated on breach of fiduciary duty, fraud, breach of contract, tortious interference, and unjust enrichment should be dismissed. As to the remaining defendants, Alsco's conspiracy claim cannot be maintained in the absence of any underlying wrongful act.  (D.I. 15 at 19-20.)

## V.      Alsco Fails to State a Claim for Unjust Enrichment

Alsco admits that its "alternative" pleading to its breach of contract claim against Oriente does not apply to any of the other defendants.  (D.I. 20 at 12.) Thus, it should be dismissed against them.

FISH & RICHARDSON P.C.

By:  */s/ Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
Brandon J. Pakkebier (#6604)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com
pakkebier@fr.com

*Attorneys for Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central*

Dated:  December 16, 2019

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALSCO, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:19-cv-1631-CFC |
| | : | |
| PREMIER OUTSOURCING PLUS, LLC, | : | |
| ROBERT PACITTI, KLAHEIM DIXON, | : | |
| LUDOVICO ORIENTE, AND DRYCLEAN | : | |
| CENTRAL, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION PURSUANT TO NOVEMBER 6, 2019 STANDING ORDER

1.     Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central's Reply Brief In Support of Their Partial Motion to Dismiss for Failure to State a Claim complies with the typeface requirement because it has been prepared in Times New Roman 14-point interface.

2.     Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central's Opening Brief In Support of Their Partial Motion to Dismiss for Failure to State a Claim complies with the type volume limitation because it contains 2,496 words, which were counted using the Word Count feature in Word 2016.

12

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    Brandon J. Pakkebier (#6604)
    222 Delaware Ave., 17th Floor
    Wilmington, DE 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com
    pakkebier@fr.com

*Attorneys for Defendants Premier Outsourcing Plus, LLC, Robert Pacitti, Khaleim Dixon, and Dryclean Central*

13