**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALSCO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1631-CFC |
| | ) | |
| PREMIER OUTSOURCING PLUS, LLC, | ) | |
| ROBERT PACITTI, KHALEIM DIXON, | ) | |
| LUDOVICO ORIENTE and DRYCLEAN | ) | |
| CENTRAL, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In this case, Plaintiff Alsco, Inc. ("Plaintiff") brings Delaware state law contract and tort claims against Defendant Premier Outsourcing Plus, LLC ("Premier"), Robert Pacitti ("Pacitti"), Khaleim Dixon ("Dixon"), Ludovico Oriente ("Oriente") and Dryclean Central (collectively, "Defendants"). All Defendants except for Oriente (the "Moving Defendants") have moved the Court to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (D.I. 14) For the reasons set forth below, the Court recommends that the Moving Defendants' Motion be GRANTED-IN-PART and DENIED-IN-PART.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff is a Nevada corporation with its headquarters in Salt Lake City, Utah. (D.I. 1 at ¶ 1) Plaintiff provides linen services by way of a regular system of pick-up and delivery to its customers, which include restaurants, bars, automobile repair shops, factories, hotels and hospitals. (*Id.* at ¶ 11) Plaintiff operates globally; within the United States alone, Plaintiff

operates in at least 40 states through 81 branches and 99 depots.  (*Id.* at ¶ 12)  Relevant to this case are two of its branches—one located in New Castle, Delaware, and another located in Lanham, Maryland.  (*Id.* at ¶¶ 13, 31)

Plaintiff maintains a hierarchy of labor across its locations.  Among its employees are Route Sales Representatives ("RSRs"), who are delivery drivers and the primary contacts with Plaintiff's customers.  (*Id.* at ¶ 15)  One level up from RSRs are District Managers.  (*Id.* at ¶ 16) District Managers manage the RSRs and also help with customer satisfaction.  (*Id.*)  The next level up are the Service Managers, who manage the RSRs and the District Managers.  (*Id.* at ¶ 17)  Finally, above Service Managers are General Managers, who are "responsible for overseeing all facets of a branch operation[,]" including customer service, products, pricing, budgeting, and team management.  (*Id.* at ¶¶ 17-18)

Defendant Pacitti was General Manager of Plaintiff's New Castle branch from about January 2015 until his employment was terminated in November 2016.  (*Id.* at ¶¶ 20-23) Defendant Dixon was a District Manager of Plaintiff's New Castle branch from June 2016 until his employment was terminated in March 2017.  (*Id.* at ¶¶ 24, 29)  Plaintiff alleges that both Pacitti and Dixon, through their employment with Plaintiff, had access to and knowledge of certain of Plaintiff's proprietary information, including, *inter alia*, "prospective and existing customer lists, customer pricing and discounts, customer preferences, and contract terms."  (*Id.* at ¶¶ 22, 27)

Defendant Premier is also in the business of linens, and competes with Plaintiff's New Castle branch, by virtue of offering similar services in the same geographic area.  (*Id.* at ¶¶ 52-53)  Pacitti created and organized Premier in December 2016, and he runs Premier out of his home in Mullica Hill, New Jersey.  (*Id.*)  In March 2017, shortly after Dixon left Plaintiff, Pacitti

hired him to work at Premier.  (*Id.* at ¶ 54)  In August 2018, Premier's certificate of formation was amended to include Dixon as a new member of the limited liability company.  (*Id.* at ¶ 55)

Defendant Oriente worked for Premier from 2013 through June 2019; at all relevant times relating to this case, he was employed as a General Manager at Plaintiff's Lanham branch. (*Id.* at ¶¶ 31-32, 36)  Upon his hiring, Oriente signed a confidentiality agreement with Plaintiff. (*Id.* at ¶¶ 34-35; D.I. 19, ex. A)

Defendant Dryclean Central is a Delaware company located in Delaware.  (D.I. 1 at ¶ 6) It is owned and operated by Nate Murray and Scott Hunter.  (*Id.*)

The Complaint alleges that the Defendants engaged in four types of misconduct that harmed Plaintiff.

First, the Complaint alleges that Premier allegedly poached a number of Plaintiff's customers or prospective customers.  Premier did so through Pacitti and Dixon, who are alleged to have:  (1) as to "at least seven former Alsco customers" solicited the customers based on prior relationships they had with those customers; and (2) as to "at least five more customers" have obtained those customers by using Plaintiff's proprietary information.  (*Id.* at ¶¶ 59-62)

Second, the Complaint alleges that in March 2019, Dixon stole one of Plaintiff's linen hampers from a customer in the Philadelphia area.  (*Id.* at ¶ 64)  Plaintiff alleges that Premier uses these stolen goods its business.  (*Id.* at ¶¶ 64, 66)  It also alleges that Defendants have similarly stolen other goods and property from Plaintiff to use in Premier's business, including laundry bins, hampers, floor mats, linens, towels, napkins, aprons and more.  (*Id.* at ¶ 65) Defendants are alleged to have laundered some of this stolen product at the Lanham branch with Oriente's help.  (*Id.* at ¶ 67)

Third, Plaintiff alleges that Oriente, while working as the General Manager of the Lanham branch, created a fictitious customer account "and misrepresented to [Plaintiff] that this account was to launder customer[-]owned goods ('COGS')."  (*Id.* at ¶ 69)  But, in actuality, Plaintiff was laundering Plaintiff's own linens that Defendants had converted to Premier's use. (*Id.* at ¶¶ 69-70)  Due to the use of this fraudulent account, Plaintiff performed this work at an "extreme discount" rate of 75% and then Premier put the linens back in service for itself and its customers.  (*Id.*)

Fourth, the Complaint alleges that Dryclean Central has been using Plaintiff's property without its consent.  (*Id.* at ¶¶ 37-38, 43)  More specifically, Dryclean Central has been:  (1) laundering Plaintiff's textiles and floormats on behalf of Premier, which Premier then delivers to its own customers and (2) using Plaintiff's property in its own establishment, including, *inter alia*, its floor mats, without its consent.  (*Id.* at ¶¶ 39, 41-42)  These products were all clearly marked with Plaintiff's label or other indicia of its ownership, though Defendants have attempted to alter the products to remove those indicia.  (*Id.* at ¶¶ 40, 44)

Additional facts relevant to resolution of this Motion will be set out in Section III below.

### B.    Procedural Background

Plaintiff filed this lawsuit in August 2019.  (D.I. 1)  Moving Defendants filed their Motion on November 15, 2019.  (D.I. 14)  Briefing on the Motion was completed on December 16, 2019, (D.I. 21), and the Motion was referred to the Court for resolution by United States District Judge Colm F. Connolly on December 20, 2019, (D.I. 24).

## II.    LEGAL STANDARD

In order to state a claim for relief pursuant to Federal Rule of Civil Procedure 8, the pleading must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). However, pursuant to Federal Rule of Civil Procedure 9(b), to the extent that a complaint alleges fraud or mistake, the pleading must "state with particularity" such claims. Fed. R. Civ. P. 9(b).

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III. DISCUSSION

In the Complaint, Plaintiff alleges 15 causes of action. (D.I. 1) Moving Defendants have moved to dismiss eight of those claims as to them: the Third Cause of Action for breach of fiduciary duty—agent, which is brought against Pacitti, Oriente, and Dixon, (*id.* at ¶¶ 91-99); the Fifth Cause of Action for breach of the duty of loyalty—agent, which is brought against Pacitti, Oriente, and Dixon, (*id.* at ¶¶ 107-15); the Seventh Cause of Action for breach of the duty of loyalty—agent, which is brought against Pacitti, Oriente, and Dixon, (*id.* at ¶¶ 123-31); the Ninth

Cause of Action for aiding and abetting fraud, which is brought against Pacitti, Dixon, and

Premier, (*id.* at ¶¶ 140-44); the Tenth Cause of Action for tortious interference with business and

contractual relations, which is brought against Pacitti, Dixon, and Premier, (*id.* at ¶¶ 145-56); the

Eleventh Cause of Action for tortious interference with prospective business opportunities,

which is brought against Premier, Pacitti, Dixon and Oriente, (*id.* at ¶¶ 157-66); the Thirteenth

Cause of Action for civil conspiracy, which is brought against all Defendants, (*id.* at ¶¶ 173-79),

and the Fourteenth Cause of Action for unjust enrichment, which is brought against all

Defendants, (*id.* at ¶¶ 180-86).  (D.I. 15 at 1)  The parties do not dispute that Delaware law

applies to all claims.  (D.I. 15 at 6; D.I. 20 at 2)  Below, the Court will address the parties'

arguments in the order in which they were addressed in Moving Defendants' opening brief.

### A.    Breach of Fiduciary Duty (Third, Fifth and Seventh Causes of Action)

In its Third, Fifth, and Seventh Causes of Action, Plaintiff brings claims for breaches of

fiduciary duty against Moving Defendants Pacitti and Dixon.  (D.I. 1 at ¶¶ 91-99, 107-15, 123-

31)  The parties seem to agree that these three Causes of Action rise and fall together.  (D.I. 15 at

6 & n.4; D.I. 20 at 3-4)[1]  To plead a claim for breach of fiduciary duty, a Plaintiff must plausibly

allege:  (1) that a fiduciary duty existed and (2) that the defendant breached that duty.  *See Beard

Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd in relevant part sub nom. ASDI,

Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).  In moving for dismissal, Moving

Defendants make two arguments:  (1) that Plaintiff has failed to sufficiently allege that a

---

[1]    Moving Defendants point out that "[b]ut for the addition of the phrase, 'of loyalty[,]'" the Fifth and Seventh Causes of Action are "identical and entirely duplicative" of the Third Cause of Action.  (D.I. 15 at 6 n.4)  But Moving Defendants do not seek to have any of the claims dismissed on this ground.  (*Id.*)

fiduciary duty existed, and (2) that Plaintiff has failed to allege a breach of any such duty.  (D.I. 15 at 6-10; D.I. 21 at 1-5)  The Court will address these arguments in turn.

First, the Court finds that Plaintiff has adequately alleged a fiduciary relationship between itself and Pacitti and Dixon.  It is true, as Moving Defendants point out, (D.I. 15 at 6-7), that an employee-employer relationship does not, standing alone, give rise to fiduciary duties.  *Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*, C.A. No. 7866-VCP, 2014 WL 897223 at *20 (Del. Ch. Mar. 5, 2014).  But, "where an agent represents a principal in a matter where the agent is provided with confidential information to be used for the purposes of the principal, a fiduciary relationship may arise."  *Id.*; *see also Mitchell Lane Publishers, Inc. v. Rasemas*, C.A. No. 9144-VCN, 2014 WL 4925150 at *6 (Del. Ch. Sept. 30, 2014).  Such information need not rise to the level of a trade secret, but may instead be valuable and confidential employer information the employee received while occupying a position of trust.  *Mitchell Lane Publishers*, 2014 WL 4925150 at *6.

The parties' arguments here focus on whether Plaintiff sufficiently alleges that Pacitti and Dixon actually acquired confidential or proprietary information during their employment with Plaintiff, so as to potentially give rise to a fiduciary relationship with regard to that information.  (D.I. 15 at 6-8; D.I. 20 at 4-6; D.I. 21 at 2-4)  In this regard, Plaintiff has met its pleading burden.  In relevant part, Plaintiff alleged that Defendants Pacitti and Dixon each had access to and knowledge of "confidential, proprietary, and trade secret information including . . . its prospective and existing customer lists, customer pricing and discounts, customer preferences, and contract terms."  (D.I. 1 at ¶¶ 22, 27; *see also id*. at ¶¶ 94, 96, 110, 112, 126, 128)  The Complaint thus alleges that these "customer lists," "customer pricing and discount[]" information, "customer preferences" and "contract terms" are proprietary (i.e., not generally

7

known to the public); at the pleading stage, it seems plausible that this is true.[2]  So Moving Defendants' challenge in this regard must fail.  *See Bamford v. Penfold, L.P.*, C.A. No. 2019-0005-JTL, 2020 WL 967942, at *10 (Del. Ch. Feb. 28, 2020) (denying a motion to dismiss a breach of fiduciary duty claim, where, *inter alia*, the defendant was alleged to have possessed the plaintiff's "confidential financial information"); *cf. Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, Civil Action No. 3290-VCP, 2009 WL 1387115 at *11 (Del. Ch. May 18, 2009) (holding, in a post-trial opinion, that information concerning employer profit margins, customer information, and existing contracts was confidential and gave rise to a fiduciary duty to protect the information), *aff'd*, 988 A.2d 938 (Del. 2010).

Second, the Court finds that Plaintiff has adequately alleged a breach of duty.  Under Delaware law, it is a breach of fiduciary duty to take confidential information learned from one's former employer and to use it to then compete against that former employer.  *See Wayman Fire Protection*, 2014 WL 897223 at *22 (Del. Ch. Mar. 5, 2014); *see also Beard Research, Inc.*, 8 A.3d at 602-03.[3]  In the Complaint, Plaintiff asserted, *inter alia*, that: "[i]n total, at least seven

---

[2]      In their reply brief, in arguing that these allegations are insufficient to demonstrate that these materials were proprietary and confidential, Moving Defendants cite exclusively to *post-trial* opinions from the Delaware Court of Chancery.  (D.I. 21 at 3)  But whether the record at a case-dispositive stage might lead a factfinder to draw a different conclusion is of no matter here, as we are at the pleading stage.  At that stage, the Court is required to read the allegations in the light most favorable to Plaintiff.

[3]      In their opening brief, Moving Defendants asserted that Plaintiff had not alleged any breaches of duty that took place while Defendants were employed by Plaintiff, (D.I. 15 at 8-10); in its answering brief, Plaintiff did not appear to dispute this claim, (D.I. 20 at 4 (discussing the duties that a "*former* employee" owes to a *"former* employer") (internal quotation marks and citation omitted, emphasis added)).  In light of this, the Court understands Plaintiff's theory of breach to focus exclusively on post-employment actions of Pacitti and Dixon that amount to a misuse of Plaintiff's confidential information in order to steal Plaintiff's customers.  That said, the Court notes that the Third, Fifth and Seventh Causes of Action contain allegations that go beyond such conduct.  (*See, e.g.*, D.I. 1 at ¶¶ 94(a), (c), (e) & (g)-(i), 96(a), (c), (e) & (g)-(i))

former Alsco customers have started using [Premier] and, upon information and belief, Pacitti and/or Dixon directly or indirectly solicited those former customers based on the relationship[s they] established, developed, and maintained while employed with [Plaintiff]."  (D.I. 1 at ¶ 61 (*cited in* D.I. 20 at 6); *see also id.* at ¶¶ 94, 96, 110, 112, 126, 128)  While not factually robust, this allegation is at least sufficient to indicate that Pacitti and Dixon used their knowledge of the content of Plaintiff's proprietary customer lists (i.e., lists that included these seven customers)— along with their relationships with those customers—to convert these people/entities into Premier customers.  This is enough to allege a plausible breach of fiduciary duty here.  *Cf. Beard Research, Inc.*, 8 A.3d 573 at 602-03 (finding in a post-trial opinion that the defendant had breached his fiduciary duties to his former employer by, *inter alia*, taking a "large amount of confidential information" including customer lists).

Accordingly, the Court recommends that the Motion be granted-in-part and denied-in-part in the manner described above as to the Third, Fifth, and Seventh Causes of Action.

### B.     Aiding and Abetting Fraud (Ninth Cause of Action)

In its Ninth Cause of Action, Plaintiff brings claims for aiding and abetting fraud against Moving Defendants Pacitti, Dixon and Premier.  (D.I. 1 at ¶¶ 140-44)  A claim of common law fraud requires:  (1) a false representation; (2) the defendant's knowledge of or belief in its falsity or the defendant's reckless indifference to its truth; (3) the defendant's intention to induce action based on the representation; (4) reasonable reliance by the plaintiff on the representation; and (5) causally related damages.  *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015).  And to set out a claim of aiding and abetting a wrongful act like fraud, Plaintiff

---

Plaintiff has not sufficiently explained how those aspects of the claims can survive, and so the Court recommends that those aspects of the claims be dismissed.

must sufficiently plead:  (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance of the wrongful act.  *Underwood v. Benefit Express Servs., LLC*, C.A. No. 18-347-RGA-MPT, 2018 WL 6819003, at *4 (D. Del. Dec. 28, 2018).  Moving Defendants challenge these claims on three grounds, all of which the Court will address below.[4]

First, Moving Defendants assert that Plaintiff has failed to plead the underlying claim of fraud with sufficient specificity pursuant to Rule 9(b).  (D.I. 15 at 10-14; D.I. 21 at 6-8)  To plead a claim for fraud pursuant to Rule 9(b), Plaintiff must state the circumstances of fraud "with particularity," i.e., by stating the "'the who, what, when, where and how of the events at issue[,]'" or providing other similar indication of particularity.  *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*, 223 F. Supp. 3d 207, 212 (D. Del. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).  Plaintiff's relevant allegations of fraud state:

> 67.  Upon information and belief, Defendants . . . laundered . . . stolen Alsco product in the Lanham [Maryland] branch through Oriente[,] who was GM at the time.
>
> 69.  During his employment with [Plaintiff] as a GM, Oriente created a ficti[ti]ous account and misrepresented to Alsco that this account was to launder customer owned goods ("COGS"). [Plaintiff] reasonably relied on these representations when pricing its services for what it believed were COGS.  Oriente's statements were false.  Instead, Oriente and the other Defendants were causing

---

[4]     For the first time in their reply brief, Moving Defendants additionally challenged this claim on the ground that Plaintiff failed to plead Moving Defendants' knowledge of the underlying fraud.  (D.I. 21 at 8).  The Court will not take up this argument, as it is improper for a party to make new argument in a reply brief.  *See Progressive Sterilization, LLC v. Turbett Surgical LLC*, Civil Action No. 19-627-CFC, 2020 WL 1849709, at *9 n.14 (D. Del. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 3071951 (D. Del. June 10, 2020); *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 331 n.13 (D. Del. 2009).

[Plaintiff] to service its own linens under the false representation that the line[ns] belonged to the fictitious customer. Through these and other misrepresentations, Oriente was able to cause [Plaintiff] to service these linens for Defendants at an approximately 75% discounted rate. Upon information and belief, the ficti[ti]ous account was created and used for [Premier's] business and to launder [Plaintiff's] linens that Defendants[] intended to and did steal for use in [Premier's] business.

70. The result was that Defendants stole [Plaintiff's] linen and equipment, provided [Plaintiff's] stolen linen to [Premier's] customers, and then caused [Plaintiff] to launder the stolen linen [at] an extreme discount as though [Premier] actually owned it and then put the laundered, stolen linen back into service for [Premier] and its customers.

. . . .

141. As described above, Oriente, while employed as a General Manger for [Plaintiff], committed fraud against [Plaintiff] by creating and intentionally concealing a fictitious account for the sole purpose of allowing [Premier] to launder [Plaintiff's] linens under a ficti[ti]ous COGS account—which Defendants stole for use by [Premier]—at an extremely discounted rate.

(D.I. 1 at ¶¶ 67, 69-70, 141)

Plaintiffs' allegations do contain an amount of specificity. They specify *who* the alleged key fraudster was: Oriente. (*Id.*) The *where* of the fraud scheme is fairly set out to be Plaintiff's Lanham branch, located at 4900 Philadelphia Way in Lanham, Maryland, which is where the stolen goods were laundered and where Oriente is alleged to have worked and committed the fraud. (*Id.* at ¶¶ 31, 67, 69) And the *what* and the *how* of the fraud (i.e., that Oriente made it falsely appear that an account that he created to launder the stolen linens at a discounted rate was the account of an Alsco customer, when it was not, and that Defendants wrongfully used this account to launder the stolen goods for their own use) are articulated in enough detail.

But the Court agrees with Moving Defendants that the allegations are deficient in one respect: that they fail to sufficiently identify the "when" of the fraud. On that score, the

11

Complaint never clearly states when Oriente created the fake account at issue, nor when Oriente had the stolen linens laundered at the Lanham branch.[5]  In its answering brief, Plaintiff suggests that what the Complaint *means* to allege is that this misconduct occurred sometime *after* Dixon stole certain linens on March 3, 2019, (*id.* at ¶ 64), and sometime before Oriente was fired by Plaintiff on July 2, 2019, (*id.* at ¶ 36).  (D.I. 20 at 7)  That may have been Plaintiff's intent, but it was not accomplished in the Complaint.  Indeed, as Moving Defendants note, (D.I. 21 at 7), elsewhere in the Complaint, Oriente is said to have created the fictitious account at issue *before* these linens were "stolen by Defendants[.]"  (D.I. 1 at ¶ 134)  This confusion simply underscores that the Complaint is unduly vague as to when exactly the fraud occurred.  *See Wise v. Biowish Techs., Inc.*, Civ. No. 18-676-RGA, 2019 WL 192876, at *5 (D. Del. Jan. 11, 2019); *cf. S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 519 (D. Del. 2010) (finding that plaintiff had sufficiently alleged the "when" of the fraud scheme by narrowing it to the months of "December 2006 to February 2007").  Plaintiff will have the ability to re-plead these allegations; if it does so, it can then make the requisite "when" clear.[6]

---

[5]     In the Ninth Cause of Action itself, the fraud is alleged only to have occurred "while [Oriente was] employed as a General Manager for [Plaintiff,]" (D.I. 1 at ¶ 141), which covers a nearly six-year time span, (*id.* at ¶¶ 30-36).

[6]     Moving Defendants also argued, citing only to Delaware state case law, that the claim failed to meet Rule 9(b)'s requirements because it did not sufficiently allege what Oriente "intended to gain by making the representations."  (D.I. 21 at 6 n.2 (citing *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)) (internal quotation marks and emphasis omitted); *see also* D.I. 15 at 13-14)  The Court is not aware of federal caselaw from this Circuit that necessarily requires that the motive for the fraud be pleaded in this manner pursuant to Rule 9(b).  But regardless, a fair reading of the Complaint is that Oriente was part of a scheme with Pacitti and Dixon to hijack Plaintiff's facilities in order to process linens for Premier's clients, and that this scheme would redound to the financial benefit of all co-conspirators.  (*See* D.I. 1 at ¶ 68)

12

Second, Moving Defendants assert that since Plaintiff failed to plead with specificity the underlying wrongful act (i.e., the fraud), they have necessarily failed to state a claim for aiding and abetting.  (D.I. 15 at 14)  As noted above, the fraud allegation that is subsumed within this claim is insufficiently pleaded pursuant to Rule 9(b), and so the failure to sufficiently plead the underlying wrongful act is also a (related) basis for the claim's dismissal.  *See Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.* 61 F. Supp. 3d 391, 401 (D. Del. 2014).

Third and last, Moving Defendants argue that Delaware's *in pari delicto* doctrine—an affirmative defense that states that if a plaintiff participates in the same sort of wrongdoing as the defendant, then the plaintiff cannot bring a claim for such wrongdoing against the defendant— bars this claim.  (D.I. 15 at 15-16); *see also Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 302-03 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015).  Moving Defendants' argument here is that the Complaint demonstrates that Plaintiff had knowledge of the underlying fraud and was thus *itself* a wrongdoer; this is said to be so because Plaintiff's then-employee, Oriente, participated in the fraud, and so his knowledge is supposedly imputed to Plaintiff.  (D.I. 15 at 15-16)  But Delaware law also allows that "where agents act purely in pursuit of their own interest to the detriment of the principal to whom they owe fiduciary duties, the societal interest in deterring such action is strong enough that the policies underlying the *in pari delicto* doctrine give way and the acts and knowledge of the faithless agent are not imputed to the corporation." *Stewart*, 112 A.3d at 303; *see also MetCap Secs. LLC v. Pearl Senior Care, Inc.*, No. Civ.A. 2129-VCN, 2007 WL 1498989, at *10 (Del. Ch. May 16, 2007) ("[T]he knowledge of an agent is generally imputed to his principal except when the agent's own interests become adverse."). This "adverse interest exception" to the *in pari delicto* doctrine is meant to cover the "'unusual' case in which the allegations support a reasonable inference of 'the type of total abandonment of

the corporation's interests' that is characteristic of, for example, outright stealing from the corporation." *Stewart*, 112 A.3d at 303 (citation omitted). Here, although the fraud scheme at issue could be framed as resulting in Plaintiff receiving an arguable "benefit" from Defendants (i.e., monies paid for the laundering of the stolen linens at a 75% discount), the overall nature of the allegations are clearly that Oriente and his co-conspirators *stole* from Alsco—i.e., that they stole both product (the linens) and money (the discount wrongfully given). At the pleading stage, such allegations are sufficient to plausibly invoke the adverse interest exception. Thus, the Court does not agree that this is an alternative basis on which the claim should be dismissed. *See In re Pitt Penn Holding Co.*, 484 B.R. 25, 41-42 (Bankr. D. Del. 2012) (declining to dismiss claims based on the *in pari delicto* doctrine when the pleading alleged a scheme whereby the defendants even made "incidental infusions of illegally obtained funds" into the plaintiff's account "for the purpose of concealing and perpetuating the fraud[,]" because in the light most favorable to the plaintiff, the complaint stated that the plaintiff's agents fully abandoned plaintiff's interests and that the plaintiff did not benefit from their wrongdoing); *see also Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 555-56 (D. Del. 2010).

Accordingly, the Court recommends the Motion be granted as to the Ninth Cause of Action, for the particular reasons set out above.

## C.      Tortious Interference with Business and Contractual Relations (Tenth Cause of Action)

In its Tenth Cause of Action, Plaintiff brings claims for tortious interference with business and contractual relations against Moving Defendants Pacitti, Dixon and Premier. (D.I. 1 at ¶¶ 145-56) As to this tort, Delaware law requires Plaintiff to sufficiently plead the following elements: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which

causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks, citation and emphasis omitted); *see also Arunachalam v. Pazuniak*, Civil Action No. 15-259-RGA, 2018 WL 4603265, at *4 (D. Del. Sept. 25, 2018).  In this cause of action, Plaintiff makes reference to two types of contracts that Defendants allegedly interfered with:  Oriente's employment agreement with Alsco, (D.I. 1 at ¶¶ 147, 150, 152), and certain of Plaintiff's contracts with its customers, (*id.* at ¶¶ 146, 151, 154).  The Court will analyze these two types of contracts in turn.

As to the Oriente agreement, Moving Defendants assert that the claim should fail because Plaintiff has not plausibly alleged Pacitti, Dixon, and Premier's knowledge of the agreement.  (D.I. 15 at 17; *see also* D.I. 21 at 10)  The Court finds this challenge to be not well taken.  In the Complaint, Plaintiff alleged:

- That Pacitti, Dixon and Oriente respectively had the titles of General Manager, District Manager, and General Manger when they were employed by Plaintiff.  (D.I. 1 at ¶¶ 20, 24, 30-31);

- That Oriente worked in concert with the other two individual Defendants to steal Plaintiff's linens and to cheat Plaintiff.  (*Id.* at ¶¶ 69-70);

- That Oriente signed a confidentiality agreement with Plaintiff.  (*Id.* at ¶¶ 34, 45-50);

- That "[t]hrough their employment with Alsco, Pacitti and Dixon know that Alsco . . . asks certain employees to sign . . . agreement[s]" similar to Oriente's confidentiality agreement.  (*Id.* at ¶ 147);

- That Pacitti, Dixon and Premier in fact knew that Oriente signed his confidentiality agreement.  (*Id.* at ¶ 150)

It is plausible, based on these allegations, that managerial employees like Pacitti and Dixon would have known that another high-level manager like Oriente would have signed a confidentiality agreement with Plaintiff.  That is especially so where all three Defendants are

alleged to have known each other well enough that they engaged in the alleged fraud scheme together. *See Nelson v. Fleet Nat'l Bank*, 949 F. Supp. 254, 260 (D. Del. 1996) (concluding that "it [was] fair to infer" that the defendant knew of the plaintiff's employment agreement by virtue of being her "co-worker").

Likewise, as to Premier, under Delaware law, the knowledge of a managing member of a limited liability company is imputed to the limited liability company. *See Doe v. Bicking*, C.A. No. S14C-05-026 CAK, 2020 WL 374677, at *4 (Del. Super. Ct. Jan. 22, 2020).[7]  And here it is alleged that Pacitti organized Premier, (D.I. 1 at ¶¶ 51-52), so his alleged knowledge of Oriente's agreement would be imputed to the company.

As to the customer contracts, Moving Defendants raise three challenges:  (1) Plaintiff's failure to plead the specific contracts that the relevant Defendants interfered with; (2) Plaintiff's failure to sufficiently allege that these Defendants actually knew about these contracts; and (3) (3) Plaintiff's failure to sufficiently allege interference with those contracts.  (D.I. 15 at 17-18) The Court need only address the first of these, as Delaware law indicates that in order to plead a claim for tortious interference with business and contractual relations, the plaintiff must actually identify the specific contract that was interfered with.  *See Overdrive, Inc. v. Baker & Taylor, Inc.*, Civil Action No. 5835-CC, 2011 WL 2448209, at *9 (Del. Ch. June 17, 2011) (granting a motion to dismiss a claim for interference with existing business relations because the plaintiff had failed to "identify a single contract that has been breached due to defendant's alleged

---

[7]  "It is the general rule that knowledge of an officer or director of a corporation will be imputed to the corporation.  This basic principle of agency law applies with equal force to LLCs."  *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, C.A. No. 5843-VCL, 2012 WL 1869416 (Del. Ch. May 16, 2012) (internal quotation marks, alterations and citation omitted), *judgment entered*, (Del. Ch. 2012), *and aff'd*, 68 A.3d 665 (Del. 2013).

conduct"); *Irgau v. Christiana Care Health Servs.*, Civil Action No. 07C-11-180-JOH, 2008 WL 1724250, at *5-6 (Del. Super. Ct. Apr. 9, 2008) (dismissing tortious interference claims when the plaintiffs failed to identify their contracts with specific patients); *see also Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, No. 94C-03-189-WTQ, 1997 WL 529587, at *14 (Del. Super. Ct. Jan. 29, 1997) (granting summary judgment to defendant when plaintiff had failed—twice—to "identify a specific contract or potential business opportunity" allegedly compromised by the defendant). And all that Plaintiff has alleged here is that the contracts that were interfered with are those of "at least seven former Alsco customers [who] have started utilizing [Premier.]" (D.I. 1 at ¶ 61 (*cited in* D.I. 20 at 10))  That is not enough.

Thus, the Court recommends that the Motion be denied as to the Tenth Cause of Action, but only because the claim is sufficiently alleged with regard to tortious interference with Oriente's employment agreement.

### D.    Tortious Interference with Prospective Business Opportunities (Eleventh Cause of Action)

In its Eleventh Cause of Action, Plaintiff brings claims for tortious interference with prospective business opportunities against Moving Defendants Premier, Pacitti and Dixon.  (D.I. 1 at ¶¶ 157-66)  A plaintiff pleading this claim must plausibly allege:  (1) the reasonable probability of a business opportunity; (2) the intentional interference by defendant with that opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.  *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014) (citing *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981)).

Moving Defendants challenge this claim on multiple grounds, but the Court need only address one of those:  that Plaintiff has failed to allege the reasonable probability of a business

17

opportunity.  (D.I. 15 at 18-19; D.I. 21 at 9-10)  To sufficiently plead this element, Plaintiff

"must identify a specific party who was *prepared to enter[] into a business relationship* but was

dissuaded from doing so by the defendant. . . .  While the plaintiff does not need to identify a

party by name, the plaintiff must do more than offer vague statements about unknown

customers."  *Roxul USA, Inc. v. Armstrong World Indus., Inc.*, Civil Action No. 17-1258, 2018

WL 810143, at *8 (D. Del. Feb. 9, 2018) (emphasis added) (quoting *Organovo Holdings, Inc. v.*

*Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017) (internal quotation marks omitted)).  Here,

Plaintiff's relevant allegations are that it kept "prospective and existing customer lists[,]" (D.I. 1

at ¶¶ 22, 27), and that "[u]pon information and belief, [Defendant Premier] has obtained at least

five more customers" through improper means, (*id.* at ¶ 62).  (D.I. 20 at 10-11 (pointing to

paragraph 62's allegations as identifying the relevant customers as to this claim))  But nothing

about these allegations provides any hint as to who these five entities are or (more importantly)

whether they were "prepared to enter into a business relationship" with Plaintiff.  In fact, because

so little information is provided above these "five more customers[,]" it is not even clear from

the Complaint that they are in fact *prospective* customers (as opposed to already-existing

customers).  Therefore, these allegations fall short of the mark.  *See Roxul USA*, 2018 WL

810143, at *8 (dismissing a tortious interference claim when the pleading failed to allege "facts

supporting an inference of a single distributor prepared to enter into a business relationship with

[the plaintiff]").[8]

---

[8]     *See also Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021,
1055 (S.D. Cal. 2017) (dismissing a claim for tortious interference with a prospective business
opportunity under Delaware law, where the complaint "contain[ed] no factual details showing or
supporting an inference that [the plaintiff] had a reasonable probability of a business opportunity
with" certain specific retailers who opted to sell the defendant's product instead); *cf. Military
Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 758
(D. Del. 2017) (declining to grant dismissal of such a claim, where it was alleged that "numerous

Accordingly, the Court recommends that the Motion be granted as to the Eleventh Cause of Action.

### E.        Civil Conspiracy (Thirteenth Cause of Action)

In its Thirteenth Cause of Action, Plaintiff brings a claim for civil conspiracy against all Defendants.  (D.I. 1 at ¶¶ 173-79)  The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage.  *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987).  Moreover, "[c]ivil conspiracy is not an independent cause of action in Delaware, but requires an underlying wrong which would be actionable absent the conspiracy." *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 694 (Del. Super. Ct. 1986).

With regard to Moving Defendants other than Dryclean Central, the parties agree that the civil conspiracy claim here rises and falls with the viability of the underlying torts that are alleged against those Defendants (other than with regard to the underlying tort of conversion, which Moving Defendants agree is adequately pleaded).  (D.I. 15 at 20; D.I. 20 at 11; D.I. 21 at 10-11)  In light of the Court's recommendations herein, this claim would also stand against the other Moving Defendants with the exception of claims based on the underlying torts of fraud/aiding and abetting fraud, tortious interference with business and contractual relations (as relating to "Alsco's current business") and tortious interference with prospective business opportunities, (D.I. 1 at ¶ 175), which Moving Defendants have successfully challenged herein.

---

agents from across the country ha[d] commented to plaintiffs that [defendant's] class ha[d] confused real estate agents, military personnel, and the public, and led them to believe that they were taking plaintiffs' class[,]" as from this, the Court could infer that "specific parties were involved") (certain alterations in original, internal quotation marks and citation omitted)).

With regard to Dryclean Central, other than as to a conspiracy to commit the underlying tort of conversion, Moving Defendants argue that this claim should not stand. (D.I. 15 at 19-20; D.I. 20 at 11; D.I. 21 at 10-11) Moving Defendants' argument seems to be that because Dryclean Central is not charged with participation in any relevant underlying tort other than conversion (in the Twelfth Cause of Action), it cannot be alleged to have participated in a conspiracy to commit such a tort. (D.I. 15 at 19-20; D.I. 21 at 11) The Court does not understand why that is so. Indeed, the premise of Moving Defendants' argument seems to run directly counter to what a civil conspiracy claim allows—i.e., that a conspirator can be liable for the wrongful acts of his co-conspirators that are performed in furtherance of the conspiracy. *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006) ("The benefit to a plaintiff of establishing a civil conspiracy claim is that all conspirators will be vicariously liable for the acts of co-conspirators in furtherance of the conspiracy.").[9]

Therefore, the Court recommends that the Motion be granted-in-part as to the Thirteenth Cause of Action.

### F.      Unjust Enrichment (Fourteenth Cause of Action)

In its Fourteenth Cause of Action, Plaintiff brings a claim for unjust enrichment against all Defendants. (D.I. 1 at ¶¶ 180-86) Under Delaware law, to plead a claim for unjust enrichment, a plaintiff must plausibly allege five elements: "'(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of

---

[9]      This is not to say that the claim *is* actually sufficiently pleaded as to Dryclean Central with regard to a conspiracy to commit torts other than conversion (it is only to say that the one rationale put forward for dismissal by Moving Defendants as to Dryclean Central was not a good one). Indeed, it is not clear to the Court that Plaintiff *really means* to assert this claim against Dryclean Central regarding a conspiracy to participate in any other underlying tort but conversion. If Plaintiff does mean to do so, it can attempt to re-plead the claim to more clearly accomplish that in the future.

justification, and (5) the absence of a remedy provided by law.'" *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 337 (D. Del. 2017) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

Moving Defendants challenge Plaintiff's claim on multiple grounds, (D.I. 15 at 20-21), but the Court only need address one of them here. The Court agrees with Moving Defendants that this cause of action was not plausibly pleaded, because the content of the claim amounts to little more than a formulaic recitation of the elements of an unjust enrichment claim. Here, the Complaint baldly refers to Defendants' "wrongful conduct and actions against [Plaintiff]" that "constitute unjust enrichment" and "caus[ed Plaintiff's] impoverishment." (*Id*. at ¶¶ 181, 183) And although the claim incorporates by reference the prior 179 paragraphs that preceded it, (*id*. at ¶ 180; D.I. 20 at 12), that does not give Defendants or the Court real notice about its particulars. Those 179 paragraphs include reference to various alleged bad acts involving various persons and entities, and nothing in this cause of action serves to narrow down the conduct that is meant to comprise the claim. *See Hydrogen Master Rights*, 228 F. Supp. 3d at 337 (citing cases).

As such, the Court recommends that the Motion be granted as to the Fourteenth Cause of Action.

## IV.     CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED with respect to the Ninth, Eleventh and Fourteenth Causes of Action. It recommends that it be GRANTED-IN-PART and DENIED-IN-PART in the manner set out herein with respect to the Third, Fifth and Seventh Causes of Action. It recommends that the Motion be GRANTED as to the Tenth Cause of Action with respect to the customer agreements but DENIED with respect to

21

the Oriente agreement.  And it recommends that the Motion be GRANTED as to the Thirteenth Cause of Action to the extent the claim is based on the underlying torts of fraud/aiding and abetting fraud, tortious interference with business and contractual relations (as relating to "Alsco's current business"), and tortious interference with prospective business opportunities and DENIED in all other respects.

It seems at least possible to the Court that Plaintiff, if given one more chance, could sufficiently amend its pleading to properly allege some or all of the claims/portions of claims that the Court has recommended be dismissed.  In light of that, because this is the first time the Court has found these claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that Plaintiff be given leave to file one further amended complaint addressing the deficiencies as to these claims.  The Court also recommends that if the District Court affirms its decision herein, Plaintiff be given no more than 14 days to file such an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  July 22, 2020

_Christopher J. Burke_
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE